**AFFIRM; and Opinion Filed December 11, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-12-00561-CV

**ROBERT MILLER, Appellant**
**V.**
**MATTHEW AARON CHURCHES, Appellee**

**On Appeal from the 382nd Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 1-10-206**

## OPINION

Before Justices Fillmore, Myers, and Lewis
Opinion by Justice Lewis

A jury concluded that appellee Matthew Aaron Churches was responsible for an automobile accident in which appellant Robert Miller was injured. The jury awarded Miller $23,810.45 for past medical expenses and past physical pain. The jury declined to award him damages for future medical expenses or future physical pain, and it declined to award any damages for loss of earning capacity or physical impairment. Miller appeals, contending the evidence is factually insufficient to support the jury's award. Specifically, Miller complains of the jury's failure to compensate him adequately for purportedly accident-related injuries to his hip, lower back, and neck. We affirm the trial court's judgment.

**Standard of Review**

When a party attacks the factual sufficiency of an adverse finding on an issue on which he had the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We consider and weigh all of the evidence, and we will set aside a verdict on the issue only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

**Sufficiency of the Evidence**

*Background*

The fundamental issue in this case is the nature and extent of the injuries suffered by Miller as a result of the February 2008 automobile accident.[1] It is undisputed that Miller suffered from a degenerative condition of the spine and hip prior to the accident. Nevertheless, Miller worked full-time as a gastroenterologist from the day of the accident through June 2010. Our record contains Miller's records of medical treatment between 2006 and the time of trial. During that time he was treated by a series of medical professionals. He underwent a number of conservative treatments for his afflictions, but ultimately had cervical spinal fusion surgery and total hip replacement surgery. Evidence was presented at trial that he would require further spinal surgery on his lower back and that he was no longer able to work.

Miller contends the overwhelming evidence shows that his degenerative condition was asymptomatic before the 2008 accident, but that the accident exacerbated the condition and caused symptoms to appear that have never subsided. He stresses in this Court that ever since the accident he has experienced pain in his neck, back, and hip. Thus, he argues, the jury should

---

[1] The accident occurred when Churches attempted to turn left across two lanes of traffic, and Miller's vehicle—driving in the second lane—struck Churches's vehicle on the latter's passenger side.

have awarded damages for all of his spine and hip treatment—including past and future surgeries—and for his loss of earning capacity.

*Miller's Challenge to Expert Testimony*

Miller's single challenge in this appeal is to the testimony of Churches's expert witness, Dr. Charles Banta. Banta opined at trial that the injuries Miller suffered from the accident were muscular injuries that were resolved by treatment and time. In Banta's opinion, Miller's subsequent problems with his neck, lower back, and hip were caused independently, over time, by his degenerative condition. Miller contends this testimony provided the only possible basis for the jury's damages award.

Miller contends that Banta's opinion is nothing more than speculation and, as such, is incompetent evidence that we cannot consider in our factual sufficiency review. Miller does not question Banta's qualifications or his methodology. Nor does Miller challenge the reliability or relevance of Banta's testimony.[2] Instead, Miller calls Banta's testimony "the mere *ipse dixit* of a credentialed witness." *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009) ("[A] claim will not stand or fall on the mere *ipse dixit* of a credentialed witness." (quoting *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999))). Miller relies on the principle iterated in *Pollock*:

> [I]f no basis for the [expert's] opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection.

284 S.W.3d at 818. Given this precedent, we agree Miller may present a challenge to Banta's opinions on the narrow basis of their legal sufficiency.

When an expert's testimony is challenged as non-probative because it is conclusory or speculative, our review is limited to the face of the record. *Id.* at 817. Our inquiry, thus, is

---

[2] Miller did not object to Banta's testimony on any of these grounds in the trial court. Thus, he did not preserve error on these bases.

whether the record provides a basis for Banta's opinion and whether that basis actually provides support for his opinion.

Miller has categorized his sufficiency complaints by the location of his bodily injuries: hip, lower back, and neck. We address Banta's opinions on each category of injury in turn to determine if they have a valid basis in the record.

*Miller's Hip Injuries*

On March 18, 2008, Miller first sought treatment for pain he was experiencing after the accident. He was seen and treated by Dr. Abraham Abdo, an orthopedic surgeon. Abdo diagnosed Miller with a sprained right hip. Abdo performed a series of neurological tests on Miller's hip; all had normal results, indicating Miller was not experiencing any pressure on the nerves and had not sustained any nerve damage. Hip tests also indicated Miller had no limitations in his range of motion following the accident. However, Abdo took x-rays of Miller's right hip, and those x-rays showed significant osteoarthritis in that joint. X-rays also showed the presence of large bone spurs where cartilage had started to deteriorate in Miller's hip.[3] Although the x-ray indicated what Banta called "pretty significant" degenerative change in the hip, it showed no fracture or swelling or other traumatic injury that could be attributed to the car accident. In late June, Miller sought treatment from a chiropractor, Dr. Timothy Lehmann. Miller did not report a hip complaint to Lehmann. Although Miller demonstrated pain during some of the lower extremity muscle testing, Lehmann's assessment and plan were directed toward Miller's spinal issues.

Miller did have a series of three steroid injections in his hip during this time. These injections were performed by Dr. Greg Jones on August 5, 2008, October 22, 2009, and May 10,

---

[3] Banta testified that a bone spur must exist (and grow) for a period of time between one-and-one-half and two years before it is large enough to be seen on an x-ray.

–4–

2010. Eventually, the injections were less effective in curtailing Miller's hip pain, and Jones referred him to orthopedic surgeon Dr. James McKenzie. When giving his history to McKenzie in July 2010, Miller stated: "The[re] was no apparent precipitating event or injury. The initial onset of pain was 3 to 4 years ago." McKenzie diagnosed degenerative arthritis of the right hip, and he ultimately performed total hip replacement surgery on Miller.

Banta agreed with Abdo's diagnosis that Miller's hip injury was muscular in nature, and that it resolved over time. Banta agreed with Abdo and Lehmann that tests after the accident indicated the accident had not caused any neurological injuries or aggravated Miller's existing degenerative disease. Banta agreed with the physicians who treated Miller's hip years later that Miller needed a total hip replacement.

As to the role of the automobile accident, Banta's opinion is that it caused only soft tissue injury to the hip and was not related to the need for a hip replacement. He disagreed with Jones, who opined that the replacement was needed because of the automobile accident, which exacerbated Miller's pre-existing condition. However, Jones testified that he based his opinion solely on Miller's subjective reporting that he had no symptoms before the accident. McKenzie, who performed the hip replacement surgery, did not attribute the hip replacement to the accident. And neurosurgeon Dr. Luke Knox, who performed Miller's cervical fusion (discussed below) declined to give an opinion as to the cause of Miller's hip injury.

We conclude Banta's opinions concerning Miller's hip injuries are sufficiently based on the records of the doctors who treated Miller immediately after the accident. Those records provide a basis for Banta's opinions that Miller suffered a hip sprain from the automobile accident, that with conservative treatment and time the sprain resolved, but that the degenerative condition in his arthritic hip continued to worsen over time, ultimately requiring the hip

replacement surgery.  We further conclude these records support Banta's opinion.  *See Pollock*, 284 S.W.3d at 817–18.

*Miller's Back Injuries*

Miller's second issue is focused on his lower back, or lumbar, injury.  Again, he claims the evidence is insufficient to support the jury's damages award for this injury.  Abdo diagnosed this injury as a low back strain.  (Banta explained that such a strain occurs when forces cause a stretching of the fibers holding the lower back muscles together.)  All of Abdo's tests of Miller's neurological function were normal.  He ordered an MRI of Miller's lumbar spine in March 2008; that test showed degenerative changes in the lumbar spine at multiple levels, but it did not indicate any acute injury to a disc (such as a herniation), any nerve root impingement, or any swelling.  Although Miller reported going to Abdo, in part, because of back pain, he reported improvement throughout his treatment, even reporting at one point that he had "no pain or discomfort in the back."  When Miller began to see Lehmann in 2008, he reported "mild to moderate" pain in his back.  After an examination, Lehmann concluded—as Abdo did—that Miller's injuries were muscular, soft tissue injuries.  Although he recognized Miller's degenerative disc problem, he did not believe in 2008 that Miller suffered from nerve damage or nerve root impingement.  And by March 24, 2008, Abdo reported Miller was "recovering from his injuries."

Lehmann reported, again, that Miller was experiencing soreness and muscle tightness, but he did not identify any neurological deficiencies in Miller's lower back.  It appears Miller's final visit to Lehmann was in January 2009.  The record does not indicate Miller received treatment again for his lower back until June 2010.

At that time, Jones referred Miller to neurosurgeon Knox, who acknowledged Miller's complaints about his lower back, but saw his arm and shoulder problems (discussed below) to be

the priority in his treatment. Knox testified that Miller would need surgery in the future to address a now-herniated disc and to fuse his spine in the lumbar area. Banta agreed that Miller's condition had degenerated significantly since the 2008 MRI. However, he testified the records of the 2008 treating doctors establish that there was no evidence of aggravation of Miller's degenerative condition following the automobile accident. When he compared MRIs of Miller's spine taken in 2008 to those taken in 2010, Banta saw and explained the natural progression of Miller's degenerative disease, which included not only the herniation of multiple discs but also nerve impingement.

Once again, Banta's opinions are rooted firmly in the medical records of the doctors who treated Miller during the months after the accident. And once again, his opinions are supported by those medical records. *See Pollock*, 284 S.W.3d at 817–18.

*Miller's Neck Injuries*

Miller's final issue challenges the sufficiency of the evidence supporting the damages award for his neck injury. In Miller's history, taken in March 2008, Abdo stated "[Miller] had some pain in his neck after his injury. However, he is feeling better regarding his neck." Abdo's diagnosis and the remainder of his notes all relate to the lower back and hip pain. In late June, when Miller sought treatment from Lehmann, Miller told him he was experiencing neck pain, "described as constant mild to moderate dull, burning and achy pain." Lehmann identified "muscle hypertonicity," or tightness, in the neck muscles, but did not identify any neurological issue in the cervical area. Lehmann also tested Miller's range of motion and strength and found both to be normal. Lehman initially treated Miller twice a week; through the end of June, Miller reported his neck pain was unchanged. However—beginning with his first July treatment— Miller began reporting slight improvement in his neck pain. Within two months of beginning treatment, Lehmann reduced Miller's visits to once a week. And reports by Miller of continued

–7–

improvement are found in the notes of every office visit from July through September 15, 2008, the final office visit memorialized in our record.

In late November 2008, Miller told Jones—who had earlier given Miller an injection for his hip pain—that he experienced a sudden onset of problems with his left shoulder. Jones reported:

> There is no trauma or history of injury. He just had a sudden inability to abduct or laterally elevate his arm. He is extremely weak and uncomfortable to resisted external rotation.

Jones attributed this onset to a degenerative change in Miller's AC joint, and Jones injected the shoulder in late October 2009. From May 2010 on, Miller reported experiencing left arm weakness. Miller finally saw Knox in June 2010, and he concluded Miller's arm and shoulder complaints were the result of his degenerative cervical spine. Knox ultimately performed cervical fusion surgery to address this problem.

Banta agreed with Knox that Miller's arm problem was related to his degenerative disc disease, specifically to another now-herniated disc.[4] Banta rejected the view that the automobile accident had exacerbated Miller's degenerative condition because there was no evidence after the accident of this herniation or of any other acute neurological injury. In this regard, Banta's opinions were not significantly different from experts on whom Miller relies. For example, Jones testified he did not believe the 2008 automobile accident caused Miller's shoulder and arm issues. And although Knox was willing to credit the accident for exacerbating Miller's degenerative condition, he did admit that—given the delay in time between the accident and the onset of problems with the arm—"it does make it somewhat concerning to attribute it to [the accident.]"

---

[4] Much is made by appellant of the role of pseudogout in Banta's opinions. There is no dispute that following Miller's neck surgery, pseudogout crystals were discovered by the pathologist examining his cervical material. Witnesses expressed a number of possible causes of the condition. Banta testified in his opinion the condition was consistent with the degenerative process underway in Miller's cervical spine. Regardless, the record is clear that Banta's opinions concerning the origins of Miller's neck and shoulder pain are not limited to this condition.

We conclude Banta's opinions concerning Miller's neck injuries are based on the records of the doctors who treated Miller immediately after the accident as well as the testimony and records of doctors who treated Miller years later. We conclude these medical records provide a clear basis in the record for Banta's opinions concerning the nature of Miller's neck injury, and we further conclude these records support Banta's opinions. *See Pollock*, 284 S.W.3d at 817–18.

*Conclusions Regarding Banta's Expert Opinions*

The points of contention in this appeal are limited. Miller argues that all of the injuries and treatment he has undergone since March 2008 related to his neck, back, and hip were caused by the automobile accident and should be compensated in his damages award. Banta's opinion is that Miller sustained a different kind of injury as a result of the accident: injury to the musculature of the spine and pelvis. And while those soft tissue injuries resolved over the months following the accident, Miller's degenerative disease caused him to suffer more pain and disability as the months and years went by and his condition worsened.

In this Court, Miller makes two basic arguments in an effort to undermine Banta's opinions. The first argument is Miller's contention that he *never* experienced pain before the accident, and he *always* experienced pain after the accident. The argument does not distinguish between pain from muscular, soft tissue injuries and pain from degenerative conditions in his discs and joints. However, the medical records of his treating doctors support making such a distinction. We know those soft tissue injuries were diagnosed by Abdo and Lehmann. And we can look at a number of factors in the record that support the inference those injuries resolved following time and treatment: the extended periods of time between appointments for treatment, especially through 2009; the lessening of complaints concerning specific joints after initial treatment; and Miller's ability to continue working full time for more than two years following the accident. Indeed, even Miller's expert Knox conceded at trial that muscular injuries are a

more likely result from car accidents than neurological ones, and that the normal progression of such muscular injuries is they are resolved with time and treatment. Likewise, the undisputed diagnosis of severe degenerative disease supports recognition of a different kind of pain that developed and increased a significant time after the automobile accident. This different pain was symptomatic of a condition that required different treatments, including Miller's surgeries for spinal fusion and hip replacement.

We acknowledge Miller's argument that his hip pain did require treatment, i.e., a steroid injection, which purportedly alleviated his pain over the ten-month time period when he otherwise did not visit doctors for treatment of any spinal issues. We note the jury heard Miller's report to McKenzie before the hip replacement that his hip injury had not been caused by any apparent precipitating event or injury, and that his hip pain actually began sometime between 2006 and 2007, well before the automobile accident. Thus, it is certainly possible that Miller's hip degeneration was proceeding more quickly than his neck and lower back problems and that he began to experience joint pain before or soon after his sprained hip occurred and resolved. To the extent Miller's testimony at trial conflicted with his report to McKenzie about when his pain began, the jury may have resolved that conflict against Miller's claim that he never had pain before the accident. Regardless, we conclude Banta's opinions concerning Miller's hip pain find support in the record.

Miller's second argument is related to his first: he repeatedly argues that his subsequent joint and disc related pain is in the "same areas" as the muscular injuries diagnosed after the accident. This argument is not helpful to our analysis. It is true, for example, that Miller's 2008 strained musculature and ligaments surrounding the lower back are in the "same area" as the 2010 ruptured disc in his lumbar spine. But an injury to the soft tissue surrounding and attached to bones is not the same as an injury to the joint or disc causing neurological damage.

–10–

Banta does not dispute the existence of neurological damage—only its cause. Banta opines that Miller's neurological injuries are the result of the natural progression of his pre-existing degenerative disease over time. We conclude his opinions are sufficiently rooted in the record; they are not speculative or conclusory. *See, e.g., Duncan-Hubert v. Mitchell*, 310 S.W.3d 92, 104 (Tex. App.—Dallas 2010, pet. denied) (when expert testifies regarding facts supporting his opinion and explains how he reached opinion, testimony is not conclusory).

We overrule Miller's issues challenging the legal sufficiency of Banta's opinions relating to injuries to Miller's hip, back, and neck. We conclude Banta's opinions should be considered when we evaluate the factual sufficiency of the evidence supporting the jury's damages awards.

*Sufficiency of Evidence Supporting Damages Award*

Our review of the record indicates the various medical doctors agreed on many issues concerning the nature and extent of Miller's injuries. Some disagreements may be based on the materials made available to the various witnesses.[5] But whatever the reason for their disagreements, it is the province of the jury to resolve such conflicts. *See Faust v. BNSF Ry. Co.*, 337 S.W.3d 325, 346 (Tex. App.—Fort Worth 2011, pet. denied) ("In the face of conflicting evidence, including conflicting expert testimony, we may not substitute our own judgment for that of the jury's."); *Quiroz ex rel. Quiroz v. Covenant Health Sys.*, 234 S.W.3d 74, 84 (Tex. App.—El Paso 2007, pet. denied) ("Even expert witnesses are subject to the jury's role as the judge of credibility and weight to be given testimony."). In this case, the jury adjudged Banta's testimony to be credible, and they gave his opinions significant weight. When we consider and weigh all of the evidence before the jury, we do not find the jury's awards so against the great weight and preponderance of the evidence that they are clearly wrong and unjust. *See Dow*

---

[5] For example, when Knox formed his opinions concerning the cause of Miller's injuries, he had not been provided with medical records from Abdo or Lehmann.

–11–

*Chem. Co.*, 46 S.W.3d at 242.  We conclude the evidence is factually sufficient to support the jury's damages awards.

## Conclusion

We have concluded Banta's expert testimony is legally sufficient to be considered in this Court's review of the evidence.  We have further concluded the evidence is factually sufficient to support the jury's damages awards.  Therefore, we affirm the trial court's judgment.

/David Lewis/
DAVID LEWIS
JUSTICE

120561F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROBERT MILLER, Appellant

No. 05-12-00561-CV      V.

MATTHEW AARON CHURCHES,
Appellee

On Appeal from the 382nd Judicial District
Court, Rockwall County, Texas
Trial Court Cause No. 1-10-206.
Opinion delivered by Justice Lewis.
Justices Fillmore and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee MATTHEW AARON CHURCHES recover his costs of this appeal from appellant ROBERT MILLER.

Judgment entered this 11th day of December, 2013.

/David Lewis/

DAVID LEWIS
JUSTICE