

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CATHERINE ST. GERMAIN, | § | No. 08-13-00304-CV |
| Appellant, | § | Appeal from the |
| v. | § | 134th District Court |
| ANDREW CARTER AND BILLY SCHOPPE, | § | of Dallas County, Texas |
| | § | |
| Appellees. | § | (TC# DC-11-12463-G) |
| | § | |

**O P I N I O N**

Appellant Catherine St. Germain was a passenger in a Camaro being driven by her co-worker Andrew Carter, when Carter swerved to avoid a ladder lying across his lane on Interstate 30, and struck a truck that Billy Schoppe had driven onto the emergency lane. Catherine filed suit against both Carter and Schoppe for negligence.[1] The jury answered "no" to the question whether Carter's negligence and/or Schoppe's negligence, if any, proximately caused the occurrence in question. The trial court rendered a take-nothing judgment on the jury's verdict and subsequently denied Catherine's motion for new trial. On appeal, Catherine contends the jury's negative finding as to Carter is against the great weight and preponderance of the evidence

---

[1] Catherine suffered several injuries in the collision, including an injury to her right ankle, which was eventually surgically repaired.

and should therefore be set aside and a new trial ordered. We affirm.[2]

## DISCUSSION

In her sole issue on appeal, Catherine contends the jury's refusal to find that Carter was negligent and that his actions were the proximate cause of her injuries is against the great weight and preponderance of the evidence. Catherine asserts that despite heavy traffic conditions, Carter was travelling at 60 mph following only one-car length behind a white car, when the white car suddenly swerved out of its lane to avoid the ladder. It was only then that Carter saw the ladder in the roadway. She argues that the jury should have placed at least some negligence on Carter because ordinary care dictates that one not travel at 60 mph in heavy traffic keeping only one-car length behind the vehicle ahead.[3]

### *Standard of Review*

When a party had the burden of proof on an issue at trial and challenges the factual sufficiency of the jury's verdict against her on appeal, the party must demonstrate that the verdict is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Miller v. Churches*, 418 S.W.3d 749, 751 (Tex.App. – Dallas 2013, no pet.); *Quiroz v. Covenant Health Sys.*, 234 S.W.3d 74, 82 (Tex.App. – El Paso 2007, pet. denied). We must consider and weigh all the evidence, and we can set aside a verdict only if the evidence is so weak or is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chemical Co.,* 46 S.W.3d at 242. We are not permitted to pass

[2] This case was transferred from the Fifth Court of Appeals in Dallas, and we decide it in accordance with the precedent of that court to the extent required by TEX. R. APP. P. 41.3.

[3] Catherine also argues that if the evidence supports a finding that Carter was negligent, the defense of sudden emergency is not available to him, and also argues that the granting of a new trial as to Carter requires a new trial as to Schoppe as well. We do not reach these sub-issues, since we conclude the jury's negative finding as to Carter is not against the great weight and preponderance of the evidence.

2

upon witness credibility, nor will we substitute our judgment for that of the jury even if the evidence would clearly support a different result. *Rowlett/2000, Ltd. v. City of Rowlett*, 231 S.W.3d 587, 590 (Tex.App. – Dallas 2007, no pet.); *Quiroz*, 234 S.W.3d at 82. Rather, we will sustain the challenged finding if there is competent evidence of probative force to support it. *Quiroz*, 234 S.W.3d at 82. The fact that we may conclude that the evidence preponderates toward an affirmative answer based on our review of the record is not an appropriate ground for reversal. *Id.*

### *The Evidence*

Schoppe testified that he was traveling on Interstate 30, in what he described as a "fair amount" of normal traffic, when he began to see congestion and brake lights, and observed several cars in front of him at a complete stop and cars in the lanes beside him "stacked back" and traveling at approximately 10 mph. Schoppe observed a large extension ladder lying across his whole 12-foot lane and protruding into both the right and left lanes on each side. Schoppe testified that the ladder was not his, and that he did not see the ladder fall off a vehicle.

Schoppe drove around the ladder, pulled over onto the shoulder of the highway, and then reversed his truck and backed-up along the shoulder to get closer to the ladder. According to Schoppe, traffic in the right lane was moving so slowly he could "walk faster" than the cars traveling in that lane. Schoppe decided that since traffic was at a virtual stop, he would get the ladder and pull it off the road to allow the traffic to proceed. After he had stopped his truck, Schoppe looked out the window and saw Carter's car coming toward him. He estimated that Carter's vehicle was traveling at least 40 mph when it struck his truck. Schoppe believed that

3

Carter's car was traveling at a high rate of speed for the conditions, but agreed that Carter managed to "thread the needle" and travel between cars after losing control of his vehicle.

Carter testified that he and Catherine were driving on Interstate 30, during the "after rush hour wind down." He stated the traffic was heavy and had caused him to miss his exit, but was moving at highway speeds. He estimated his car and other cars were traveling near 60 mph. As Carter approached the area of the collision, he did not notice any stacking of cars. His vehicle was approximately one-car length behind a white car, when the white car swerved violently to the left. At that point, Carter saw the ladder lying in the road. He downshifted immediately, looked left and right, and saw the lanes filled with cars suddenly stacking up. He tried to "hug" the right lane, but because he could not change lanes, Carter's vehicle struck the ladder at approximately 40 to 50 mph. Upon striking the ladder, Carter's vehicle swerved to the right "violently," and he lost control. About one second later, Carter's vehicle struck Schoppe's truck at approximately 40-45 mph. Carter estimated that he had two seconds to make a decision after seeing the ladder.

Catherine believed Carter was driving approximately 60 mph, and that the traffic flow was "medium" with no "stacking" of cars. As Catherine was looking down at Carter's MP3 player, she heard Carter make a remark. When she looked up, she saw a ladder in their lane of travel. Carter's vehicle swerved right, then left, ran over the ladder, and struck the back end of Schoppe's truck in the emergency lane. Before Carter said something to make Catherine look up, she did not believe Carter was driving in an unsafe manner or that he was driving excessively fast. She agreed that Carter attempted to avoid the ladder, and acknowledged that Carter "did what he could with the short amount of time that it happened."

Deputy Ben Roberts of the Dallas County Sheriff's Department read from the report he

4

made after investigating the accident and interviewing witnesses at the scene. In his report, Deputy Roberts noted that a faulty evasive maneuver contributed to the accident. Deputy Roberts determined that Carter's actions had contributed to the accident, but determined that Schoppe had done nothing to cause the accident. Deputy Roberts's testimony indicated that he faulted Carter because his personal rule for taking appropriate action when debris is in the roadway is, "if it's not bigger than you, you hit it." However, he admitted that it is a natural reaction for a person to swerve. He also agreed that if Carter had driven over the ladder, it was possible he would have still lost control of his vehicle, and the accident may have occurred anyway. Deputy Roberts noted that if the ladder had not been in the roadway, traffic "would have just kept on going fine," and Carter would have had no reason to swerve or get into an accident, and the faulty evasive action would not have occurred. Deputy Roberts testified that he never heard any evidence that Carter was following another vehicle too closely.

James Moore, an accident reconstruction expert, concluded that Carter's vehicle had approached the area of impact at or near the posted speed limit of 60 mph, and that there was no "adjusted traffic" in the area when he made contact with the ladder. He stated that Schoppe's attempt to remove the ladder from the freeway would have been very dangerous because the ladder was an unexpected low-profile object and very difficult to see in the diminished light conditions that existed. Because Moore concluded that there was no congested traffic in the area, Moore also concluded that Carter's vehicle was one of the first to approach the ladder after it was on the ground. He explained that there are only three options for a driver faced with a traffic hazard, which include doing nothing and plowing right through the hazard, conducting a steering maneuver, or a stop-and-acceleration maneuver. Most people attempt a braking maneuver or a

5

steering maneuver, and Moore was not surprised that Carter attempted the steering maneuver. Moore agreed that if debris or an animal in the roadway is smaller than the vehicle, it is best to hit the object. After Moore was informed during redirect examination that Carter had testified that he was traveling one-car length behind the white car, Moore opined that was not a safe distance. He agreed that but for the ladder in the roadway, the accident, in all probability, would not have occurred.

Victor Fuentes, an employee at a nearby car dealership, testified by deposition that he was standing next to the door inside the dealership when he heard a loud rattling sound. He quickly walked or ran to the railing that surrounded the perimeter of the car lot, arriving within two minutes after he heard the sound. Fuentes noted, "There was no traffic at all," and that he did not see any traffic congestion. After Fuentes had crossed the access road, he saw a truck reversing, and then saw a Camaro swerve and strike the truck. Fuentes testified there were no cars in the Camaro's path, and there was no traffic in front of the car that swerved in front of the Camaro.

*Analysis*

The jury in this case was instructed on the doctrine of sudden emergency, which provides that a person's conduct in a sudden emergency is not negligence under certain circumstances:

> "Emergency" If a person is confronted by an emergency arising suddenly and unexpectedly, which was not proximately caused by any negligence on his part and which, to a reasonable person, requires immediate action without time for deliberation, his conduct in such an emergency is not negligence or failure to use ordinary care if, after such emergency arises, he acts as a person [of] ordinary prudence would have acted under the same or similar circumstances.

In this appeal, Catherine does not argue that Carter was not confronted by a sudden emergency. Nor does she focus on Carter's actions after the emergency arose, *i.e.*, Carter's actions after the white car swerved and before he saw the ladder in the roadway. Instead, Catherine focuses on

6

Carter's actions before the white car swerved and before he was confronted with the ladder lying in the roadway. She contends that that the sudden emergency doctrine did not apply because the emergency was caused in part by Carter's negligence. She argues that the great weight of the evidence showed that Carter was traveling at 60 mph in heavy traffic conditions, one-car length behind the white car before it suddenly swerved, and that therefore, the jury's refusal to place at least some negligence and proximate cause on Carter was against the great weight and preponderance of the evidence.

The problem with Catherine's argument concerns her premise that Carter was driving in "heavy traffic conditions." The jury heard wildly conflicting evidence regarding traffic conditions at the time of the accident. That evidence ranged from Fuentes's testimony there was "no traffic at all" and no traffic congestion and expert Moore's conclusion that there was no traffic congestion, to Catherine's testimony that traffic was medium but with no stacking of cars, to Carter's testimony that traffic was heavy but flowing with no stacking of cars, to Schoppe's testimony that traffic was congested and slowed to 10 mph, with some cars stopping and others "stacking."

From this evidence, the jury could have reasonably rejected any argument that Carter was driving in heavy traffic conditions, and rather could have properly concluded that the traffic conditions were light to medium and flowing. Based on this conclusion, the jury could have reasonably rejected both Schoppe's belief that Carter's car was traveling at too high a rate of speed for the conditions and Moore's opinion that Carter was not traveling a safe distance behind the white car. Having done that, the jury could have reasonably determined that under the traffic conditions as they saw them, Carter's speed and follow-on distance were reasonable and his

7

actions were not negligent. The reasonableness of the jury's determination is supported by Catherine's own testimony that she did not believe Carter was driving in an unsafe manner or that he was driving excessively fast, and that Carter "did what he could with the short amount of time that it happened."

When there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Reyes v. Reyes*, 458 S.W.3d 613, 616 (Tex.App. – El Paso 2014, no pet.); *United Servs. Auto. Ass'n v. Croft*, 175 S.W.3d 457, 463 (Tex.App. – Dallas 2005, no pet.); *Dallas County v. Holmes*, 62 S.W.3d 326, 329 (Tex.App. – Dallas 2001, no pet.). We cannot substitute our judgment for that of the jury even if the evidence clearly supported a different result. *See Rowlett/2000, Ltd.*, 231 S.W.3d at 590; *Quiroz*, 234 S.W.3d at 82. Even if we concluded that the evidence preponderates toward an affirmative answer that Carter was negligent, that would not be an appropriate ground for reversal. *See Quiroz*, 234 S.W.3d at 82. Rather, under the record before us, we must sustain the jury's refusal to find Carter was negligent, because there is competent evidence of probative force to support it. *See id.* Having found that the emergency was not proximately caused by any negligence on Carter's part, the jury properly applied the sudden emergency doctrine, and determined that "his conduct in such an emergency is not negligence or failure to use ordinary care" as instructed by the trial court.

Because there is competent evidence to support the jury's determination that Carter was not negligent, we need not reach the issue whether the jury's negative finding on proximate cause was against the great weight and preponderance of the evidence. *See Browning v. Paiz*, 586 S.W.2d 670, 673 (Tex.Civ.App. – Corpus Christi 1979, writ ref'd n.r.e.) ("We need not reach the second inquiry (concerning proximate cause) because we are of the opinion that there is ample

8

evidence in the record from which the jury could reasonably conclude that Paiz was not contributorily negligent[.]").

We do note, however, that there was ample evidence from which the jury could have reasonably concluded that the only causes of the accident were two. First, there was the act of some unknown third party in losing and leaving the ladder on the roadway.[4] In this regard, expert Moore agreed, but for the ladder in the roadway, the accident in all probability would not have occurred. And, Deputy Roberts also indicated that in the absence of the ladder, traffic would have proceeded "fine" and Carter would have had no reason to swerve or have an accident. Second, the white car ahead of Carter waited until the last second to swerve. In this regard, Carter testified that as he approached the area of the collision, there was no stacking of cars, but yet the white car swerved violently to the left, setting off the chain of events that resulted in the collision. And, Fuentes testified that there was no traffic in front of the car that swerved in front of Carter. From this evidence the jury could have reasonably concluded that the only cause of the accident was a combination of the ladder being left in the roadway and the white car waiting until the last second to swerve around the ladder, despite having no traffic to obscure its view of the ladder.

Having reviewed all of the evidence in the record, we are unable to conclude that the evidence is so weak or so against the great weight and preponderance of the evidence as to render the verdict clearly wrong and unjust. *Dow Chem. Co.,* 46 S.W.3d at 242. We therefore conclude the trial court did not err in denying Catherine's motion for new trial. Issue One is overruled.

**CONCLUSION**

---

[4] Catherine argued at trial that it was Schoppe's ladder in the roadway. The jury apparently rejected that argument because they did not find Schoppe negligent. Catherine did not appeal from the jury's refusal to find Schoppe negligent.

9

The trial court's judgment is affirmed.


STEVEN L. HUGHES, Justice

September 30, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.