**Jason Michael MERRILL, Appellant**

v.

**SPRINT WASTE SERVICES LP and Jose Luis Gonzalez, Appellees**

**NO. 14-16-00006-CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed August 15, 2017

James Winton, Alexander Burch, William J. Cozort Jr., Kyle Schnitzer, Matthew Maddox, Houston, TX, for Appellees.

Frank Wade Robertson, Michael Gomez, Houston, TX, for Appellant.

Panel consists of Justices Christopher, Jamison, and Donovan.

## OPINION

Martha Hill Jamison, Justice

In three issues in his personal injury lawsuit, appellant Jason Michael Merrill challenges the trial court's admission and exclusion of certain testimony regarding causation and the trial court's admission of evidence regarding prior extraneous offenses. Concluding that Merrill waived two of his evidentiary challenges and the trial court's exclusion of eyewitness testimony probably did not cause the rendition of an improper judgment, we affirm.

### Background

Merrill was driving a motorcycle in Harris County, Texas in the right lane along a service road adjacent to the North Loop freeway when an eighteen-wheeler truck owned by appellee Sprint Waste Services LP and driven by appellee Jose Luis Gonzalez swung wide into the middle lane to

make a right turn. Merrill attempted to pass the truck on the right, and his path was cut off by the truck's turning. Merrill steered the motorcycle into the curb and flew over the handlebars and under the truck's tires. He was seriously injured. Merrill admitted he was speeding when he attempted to pass the truck, and Sprint but not Gonzalez admitted that Gonzalez's right turn was wider than necessary.

The trial court excluded testimony from the sole eyewitness of the accident, Lisa Victory, that Merrill and Gonzalez were equally at fault. Officer Reginald Veal investigated the collision and concluded that Merrill had attempted to pass the truck unsafely. Both sides presented expert testimony from numerous witnesses regarding fault. After a two week trial, the jury assessed over seven million dollars in damages but found that Gonzalez was 25 percent negligent and Merrill was 75 percent negligent. The trial court rendered a take-nothing judgment.[1]

### Discussion

In three issues, Merrill complains of the trial court's admission during trial of officer testimony as to "causation and relative fault," exclusion of eyewitness testimony that Gonzalez was 50 percent at fault, and admission of evidence involving Merrill's extraneous offenses and criminal record. We conclude that Merrill waived his first and third issues by affirmatively discussing and introducing the evidence at trial before it was introduced by appellees. We further conclude that although the trial court abused its discretion in excluding eyewitness opinion testimony regarding fault, such error was harmless.

### I. Waiver by Introducing Evidence at Trial

1. Under the Texas proportionate responsibility statute, "a claimant may not recover damages if his percentage of responsibility is

In his first and third issues, Merrill asserts that the trial court abused its discretion by admitting (1) Officer Veal's deposition testimony that Merrill caused the accident by passing unsafely on the right; (2) Veal's field diagram, which Merrill contends was unreliable; and (3) evidence of Merrill's prior bad acts, including four speeding tickets, two felony convictions for evading arrest with a motorcycle, and a probation violation for driving a motorcycle while his driver's license was suspended. Sprint and Gonzalez argue Merrill waived these complaints because he opened the door by discussing this evidence during his opening statement and introducing it first at trial.

Merrill had filed pretrial motions to exclude this evidence, along with a motion in limine seeking to require the parties to obtain a ruling on the admissibility of the evidence outside the presence of the jury. The trial court denied the motion in limine. The parties dispute whether the trial court ruled on the motions to exclude. Sprint and Gonzalez argue that the trial court only ruled on Merrill's limine points. Merrill concedes that a motion in limine preserves nothing for appellate review. See *Wackenhut Corp. v. Gutierrez*, 453 S.W.3d 917, 920 n.3 (Tex. 2015) ("A motion in limine ... does not preserve error on evidentiary rulings at trial because it does not seek a ruling on admissibility."). He argues, however, that he preserved error by obtaining a ruling on his motions to exclude. We need not decide whether Merrill obtained a ruling on his motions to exclude or preserved error in doing so, because we conclude that he nevertheless waived these issues by discussing and introducing the

greater than 50 percent." Tex. Civ. Prac. & Rem. Code § 33.001.

evidence before it was introduced by appellees.

In his opening statement to the jury, Merrill's counsel said the following:

- Veal, without speaking to the only eyewitness, "automatically put down that Jason Merrill was passing unsafely to the right."
- Merrill is "no Boy Scout.... When he was 19, he got four speeding tickets. [A]bout a year after that, he got arrested for a felony, a felony for evading arrest on a motor vehicle."
- "A couple of years later, ... he got another felony ... for evading arrest on a motorcycle."
- "He wasn't supposed to be on a motorcycle at [the] time [of the accident].... [T]here was actually a court order from his probation ... that said, [y]ou should not ride a motorcycle. And he was on a motorcycle at that time."
- "We own up to that. He's taking responsibility for it."

Merrill concedes that he introduced most of the evidence first but argues that he should have been able to reference it strategically during his opening statement or introduce it on direct examination without waiving error because the trial court had already determined that it was coming in. Merrill directed this argument only to the evidence of his prior bad acts, but our analysis applies also to Veal's testimony

and diagram in light of the record and Sprint and Gonzalez's argument that all three issues were waived when Merrill opened the door to the evidence.

Merrill concedes that he introduced the evidence regarding prior bad acts. As to Veal's diagram and testimony, before Sprint and Gonzalez elicited the information, Merrill introduced deposition testimony from Lisa Victory in which she discusses the positioning of the truck on Veal's diagram. Merrill then introduced deposition testimony from Veal in which he references the field diagram and the police report, which contains the notation that Merrill "failed to pass to the right safely."

Merrill also introduced Veal's testimony about the crash report, as follows:

- "So, unit 1 is showing to be Jason Merrill. He was the occupant on the motorcycle. And then unit 2 shows ... the only occupant to be a Jose Gonzalez. And he was the operator of the tractor-trailer."
- "If there was a malfunction or defect with respect to the motorcycle that [he] believe[d] led to this incident," Veal would have included it in the crash report.

In his report, Veal recorded only one "contributing" factor causing the accident: Merrill's failure to pass safely on the right.[2] Merrill referenced Veal's conclusion in his opening statement, as referenced above.

---

**2.** We note that Merrill never objected to Veal's opinion that the accident was caused solely by Merrill's passing unsafely. Merrill moved to exclude Veal's testimony on the grounds that (1) Veal was not qualified as an expert to opine on Merrill's speed and on whether a helmet would have reduced Merrill's injuries; (2) Veal's testimony as to Merrill's speed was not helpful to the jury; (3) Veal's testimony regarding speed and the lack of a helmet was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence under Rule of Evidence 403; (4) Veal's opinion about passing on the right was unfairly prejudicial and not helpful to the jury; and (5) Veal's diagram was unreliable and would needlessly confuse the jury. Defense counsel introduced Veal's testimony that Gonzalez did not do anything that Veal believed to be a "contributing factor to [the] accident." Merrill's counsel did not object to this testimony.

It is a longstanding rule that a party may not complain on appeal that the opposing side's evidence was improperly admitted if the party introduced the same or similar evidence first. *Harris Cnty. Flood Control Dist. v. Taub*, 502 S.W.3d 320, 326 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting that a party cannot complain on appeal that testimony introduced by that party was erroneously admitted) (citing *Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 473 (Tex. 1998) (holding that objecting party waived appellate complaint regarding admission of evidence when it invited the alleged error by being the first party to introduce the allegedly objectionable evidence)). This is so even when the party obtains a pretrial ruling and running objection at the beginning of trial. *Id.* at 327; *see also Halim v. Ramchandani*, 203 S.W.3d 482, 492 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("Although [the plaintiff] obtained a pretrial ruling and a running objection at the beginning of trial, he waived his objection . . . by being the only party to introduce this evidence.").[3]

■ Once the opposing party has referred to the contested evidence, however, the party objecting to the evidence, without waiving his objection, may thereafter "defend [him]self by explaining, rebutting, or demonstrating the untruthfulness." *Taub*, 502 S.W.3d at 327. Indeed, both of the cases cited by Merrill in support of his argument involved situations in which parties did not waive their objections to evidence *that was already admitted* by countering or explaining such evidence. *See Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 4 (Tex. 1986); *Transcon. Gas Pipeline Corp. v. Texaco, Inc.*, 35 S.W.3d 658, 670

(Tex. App.—Houston [1st Dist.] 2000, pet. denied) ("When a judge erroneously overrules an objection to evidence and the objecting party then presents more evidence about the same fact to rebut, minimize, or explain the erroneously admitted evidence, the objecting party does not waive the judge's error in admitting the evidence.").

These standards recognize that even though a trial court may rule before trial that evidence is admissible, the opposing party might decide nevertheless not to introduce it. By allowing an opposing party to explain, rebut, or demonstrate the untruthfulness of evidence *after it comes in*, the opposing party is protected from waiver and still has an opportunity to respond to objectionable evidence and persuade the jury. *See Scurlock Oil Co.*, 724 S.W.2d at 4; *Transcon. Gas Pipeline Corp.*, 35 S.W.3d at 670.

Having referenced in opening statements and introduced the contested evidence at trial first, Merrill has waived his objections on appeal. *See Taub*, 502 S.W.3d at 327; *see also Halim*, 203 S.W.3d at 492. Because Merrill waived these issues, we overrule his first and third issues.

## II. Harmless Error in Excluding Eyewitness Testimony

In his second issue, Merrill contends that the trial court abused its discretion in excluding opinion testimony from the sole eyewitness that Merrill and Gonzalez were equally at fault in causing the collision and the error probably caused the rendition of an improper judgment. We conclude that although the testimony was admissible, the trial court's error in excluding it probably

---

3. Merrill did not secure a running objection. He cites no place in the record where he objected to the introduction of this evidence. *See United Parcel Serv., Inc. v. Tasdemiroglu*, 25 S.W.3d 914, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("[T]he party must re-urge its position to preserve error for appeal.").

did not cause the rendition of an improper judgment.

■ We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 918 (Tex. 2004). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner, or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). When reviewing matters committed to the trial court's discretion, a reviewing court may not substitute its own judgment for that of the trial court. *Bennett v. Comm'n for Lawyer Discipline*, 489 S.W.3d 58, 73 (Tex. App.—Houston [14th Dist.] 2016, no pet.) Thus, the question is not whether this court would have admitted the evidence. *Id.* Rather, we must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling, even if that ground was not raised in the trial court. *Id.* Therefore, we examine all bases for the trial court's decision that are suggested by the record or urged by the parties. *Id.*

■ An erroneous evidentiary ruling warrants reversal only if the error probably caused the rendition of an improper judgment. *Volkswagen*, 159 S.W.3d at 918. In making this determination, we consider the entire record. *Id.* Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). This Court ordinarily will not reverse a judgment because a trial court erroneously excluded evidence when the evidence in question is cumulative and not controlling on a material issue dispositive to the case. *Id.*

## A. Eyewitness Testimony Admissible

■ Eyewitness Lisa Victory recounted the details of the collision in a deposition transcript presented at trial. She was walking out of her office into a parking lot when she saw a motorcycle and an eighteen-wheeler truck driving on the road adjacent to the parking lot. The truck was "straddling ... two lanes." The motorcycle was in the right lane as the truck started to make a right turn. The motorcycle, which Victory believed to be speeding, hit the truck trailer, and the truck ran over the driver. According to Victory, "it looked like the back wheels of that [truck] ran over him when he was trying to make the turn."

Merrill's counsel made an offer of proof of the following deposition testimony from Victory that the trial court excluded:

[Question:] Earlier you said that you put both the motorcycle driver, Jason Merrill, and then also the truck driver of the Sprint driver at fault?

[Answer:] Yes, sir.

[Question:] What do you mean by that?

[Answer:] The reason I say I believe they're both at fault is the truck ... should not have proceeded all the way over like he did to make a right-hand turn. Jason Merrill should not have tried to pass them on the right either. They're both at fault.

[Question:] Okay. Would that be a 50/50 split?

[Answer:] Pretty much . . . .

[Question:] And you assign fault to both Jason Merrill and the Sprint 18-wheeler. You said 50/50.

[Answer:] Yes, sir.

Merrill argues that the trial court's exclusion of this evidence was an abuse of discretion that probably resulted in an improper judgment because Victory was the only eyewitness and liability was hotly contested at trial.

Under Texas Rule of Evidence 704, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Tex. R. Evid. 704. Lay witness opinion testimony is admissible as long as it is rationally based on the witness's perception and helpful to understanding clearly the witness's testimony or determining a fact in issue. Tex. R. Evid. 701. The requirement that an opinion be rationally based on the perceptions of the witness is composed of two parts: (1) the witness must establish personal knowledge of the events from which her opinion is drawn; and (2) the opinion drawn must be rationally based on that knowledge. *Lopez-Juarez v. Kelly*, 348 S.W.3d 10, 19 (Tex. App.—Texarkana 2011, pet. denied) (citing *Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997)).

An opinion will satisfy the personal knowledge requirement if it is an interpretation of the witness's objective perception of events *Id.* Here, Victory testified that she observed the truck straddling two lanes, Merrill driving faster than other traffic and approaching on the right of the truck as the truck started to make a right·

turn, Merrill hitting the truck trailer, and Merrill being run over by the truck. Victory's testimony thus was based solely on her objective perception of the collision.

An opinion is rationally based on perception if a reasonable person could draw that opinion under the circumstances. *Id.* Victory witnessed both drivers engage in traffic violations, and their combined actions resulted in a traffic collision.[4] We conclude that a reasonable person under the circumstances could opine, based solely on her perception of the collision, that both parties were equally at fault in causing the collision. *Cf. id.* (holding lay witness opinion as to cause of traffic accident was not rationally based on witness's perception because witness did not observe accident).

As to whether the testimony was helpful for the jury to understand clearly Victory's testimony or determine a fact in issue, it is hard to see how the opinion of the sole eyewitness regarding fault would not be helpful. But, as our sister court has noted in a criminal case, there is no bright line rule regarding whether testimony is helpful. *Hurst v. State*, 406 S.W.3d 617, 622 (Tex. App.—Eastland 2013, no pet.).[5] Courts balance general evidentiary considerations of relevance and consider the complexity of the information from which the opinion was drawn to determine the helpfulness of the

4. Merrill conceded that he was speeding, and Sprint admitted that Gonzalez's right turn was wider than necessary. *See* Tex. Transp. Code § 545.101 ("To make a right turn at an intersection, an operator shall make both the approach and the turn as closely as practicable to the right-hand curb or edge of the roadway."). Gonzalez denied making a wide right turn.

5. We rely on several criminal cases in our analysis as did our sister court in *Lopez-Juarez*, 348 S.W.3d at 19, because civil cases on this issue are sparse. Even though these crim-

inal case opinions are not binding precedent in civil matters, we rely on them as persuasive. *See Leedy v. Leedy*, 399 S.W.3d 335, 340 n.5 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (noting that federal authorities and opinions in criminal matters did not control the court's analysis in a civil matter); *see also Carr v. Smith*, 22 S.W.3d 128, 133 (Tex. App.—Fort Worth 2000, pet. denied) (explaining that opinions on criminal matters are not binding precedent on courts of appeals sitting in civil matters).

lay opinion. *Id.* (citing *Fairow*, 943 S.W.2d at 900). If the opinion is a shorthand rendition of the facts, then the opinion is likely to be helpful because it distills what otherwise might be difficult for the witness to describe in detail. *Fairow*, 943 S.W.2d at 900.

▮ Ultimately, the helpfulness of an opinion must be determined by the facts of the case. *Id.* Eyewitness opinion testimony can be helpful if it assists the jury in making a factual determination regarding something the eyewitness saw. *See Hartwell v. State*, 476 S.W.3d 523, 537 (Tex. App.—Corpus Christi 2015, pet. ref'd) (citing *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002) (explaining that a witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations)). Similarly, this testimony may be helpful when it clarifies the eyewitness's perception of events. *See Davis v. State*, 223 S.W.3d 466, 476 (Tex. App.—Amarillo 2006, pet. dism'd, untimely filed) (holding whether "swerve" appeared to be deliberate called for response based on witness's observation and was helpful to determine whether the action was uncontrolled or deliberate).

Here, Victory explained why she thought Merrill and Gonzalez were equally at fault: "The reason I say I believe they're both at fault is the truck … should not have proceeded all the way over like he did to make a right-hand turn. Jason Merrill should not have tried to pass them on the right either." We conclude that this opinion testimony is helpful because it is a shorthand rendition of what Victory observed.[6] Her perception was that both parties made poor driving choices which resulted in the accident. The jury

should have been able to take into account this information based on Victory's perception of the event.

▮ Sprint and Gonzalez argue, however, that Victory's opinion would not be helpful to the jury because her initial view of the scene was obstructed, she admitted that she did not see Merrill strike the curb, and she erroneously testified that the truck's turn signal was not activated. However, the jury heard this evidence and could take it into consideration when reaching its finding on fault. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) ("Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony."). It is within the province of the jury to resolve any conflicts in the evidence. *Id.* at 820; *see also Twin City Fire Ins. Co. v. Vega-Garcia*, 223 S.W.3d 762, 772 (Tex. App.—Dallas 2007, pet. denied) (noting resolution of conflicts in lay opinion testimony was within province of jury).

▮ Sprint and Gonzalez also contend that Victory's opinion on fault "inva[ded] the province of the jury in apportioning fault numerically." Rule of Evidence 704, however, abolished the common law rule that a witness cannot invade the province of the jury by offering an opinion on liability. *See Wolfe v. Wolfe*, 918 S.W.2d 533, 542 (Tex. App.—El Paso 1996, writ denied) (noting objection that trial court's admission of evidence "invaded the province of the jury" did not "constitute a valid objection inasmuch as [Rule] 704 specifically provides that testimony in the form of an opinion is not objectionable simply because it embraces an ultimate issue to be decided

---

**6.** We conclude further that Victory's response "Pretty much" to the question "Would that be a 50/50 split" was a shorthand rendition of her opinion that both Merrill and Gonzalez were at fault.

by the trier of fact").[7] Sprint and Gonzalez have not cited any authority suggesting a lay witness cannot opine that both parties were equally at fault in causing a traffic collision, and we have found none.[8] In fact, a lay opinion can establish causation when "general experience and common sense will enable a [layperson] to determine, with reasonable probability, the causal relationship between the event and condition." *Rivera v. 786 Transp., LLC*, No. 01-14-00430-CV, 2015 WL 3981708, at *5 (Tex. App.—Houston [1st Dist.] June 30, 2015, no pet.) (mem. op.) (citing *Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010)). Sprint and Gonzalez have not pointed to a legitimate basis for the trial court's exclusion of the evidence, and the record does not suggest one.

We conclude that the trial court abused its discretion in excluding Victory's opinion testimony regarding fault because the testimony was rationally based on Victory's perception of the accident and helpful for the jury to determine how the accident occurred. We conclude, however, in light of the entire record, that this error probably did not cause the rendition of an improper judgment.

## B. Harmless Error in Excluding Testimony

■ Merrill argues Victory's testimony was "brief, but vital" because (1) Victory and the officer were the only disinterested witnesses, as compared to the parties' expert witnesses who testified as to fault, and (2) Victory perceived a portion of the collision before the truck began its right turn that was not captured on surveillance videos. Sprint and Gonzalez contend that "[t]he jury's rejection of more favorable opinion testimony from Merrill's expert demonstrates that . . . Victory's less favorable opinion would not be controlling."

While we agree that, in a vacuum, testimony from disinterested witnesses tends to hold more sway, our review of the entire record does not persuade us that the exclusion of Victory's lay opinion testimony as to causation probably resulted in an erroneous judgment. Victory's testimony that was admitted at trial allowed the jury to ascertain that both parties bore some fault. She saw the truck straddling two lanes and the motorcycle speeding: accordingly, the jury could find from her testimo-

---

**7.** *See also Hurst*, 406 S.W.3d at 621 (recognizing that "[t]he doctrine which prohibited testimony that would invade the province of the jury is and has been long dead as a proposition of law" because it was supplanted by Rule 704) (citing *Mays v. State*, 563 S.W.2d 260, 263 (Tex. Crim. App. 1978), and *Ortiz v. State*, 834 S.W.2d 343, 348 (Tex. Crim. App. 1992), *superseded by statute on other grounds*, Act of May 28, 1989, 71st Leg., R.S., ch. 785, § 4.04(a), 1989 Tex. Gen. Laws 3492 (effective Sept. 1, 1989), *as recognized in Ellison v. State*, 201 S.W.3d 714 (Tex. Crim. App. 2006)); *Allen v. State*, No. 14-12-01086-CR, 2014 WL 3587372, at *5 n.7 (Tex. App.—Houston [14th Dist.] July 22, 2014, pet. ref'd) (mem. op., not designated for publication) (same). *Cf. Bauman v. Centex Corp.*, 611 F.2d 1115, 1120–21 (5th Cir. 1980) ("Rule 704 of the Federal Rules of Evidence abolishes the 'ultimate issue' rule, which previously limited

testimony that was felt would 'invade the province of the jury.' ").

Sprint and Gonzalez assert that Victory's opinion on fault improperly "told the jury what result to reach based on information that failed to include the critical piece of Merrill's striking the curb with the motorcycle." We disagree. As discussed, the jury could take into account all of the evidence—and indeed was required to resolve any conflicts in the evidence—in reaching its finding on fault. *See City of Keller*, 168 S.W.3d at 819.

**8.** Sprint and Gonzalez cite only a case from the Eastern District of Tennessee in which the district court granted a motion in limine to prevent expert witnesses from opining on the percentages of fault of the parties. *See Donathan v. Orthopaedic & Sports Med. Clinic, PLLC*, No. 4:07-CV-18, 2009 WL 3584263, at *1 (E.D. Tenn. Oct. 26, 2009).

ny that both drivers made poor driving choices. Victory also drew a picture of the truck on a diagram that was admitted at trial and depicted the truck as being almost entirely in the center lane, which, if true, both parties agreed would not be a proper turn.

Surveillance videos admitted at trial show a portion of the incident, but some of the area where the incident occurred was not covered by video surveillance, including the lane positions of the truck and the motorcycle right before the collision. Victory filled in these details not captured on video with her observations of what happened, so even though her testimony was not bolstered by her opinion on fault, the jury heard her testimony regarding what she saw.

Veal arrived at the scene of the accident after Merrill had been transported to the hospital. Veal agreed that if Gonzalez had turned right from the middle lane, he would have made an improper turn. However, Veal could not tell from photographs and surveillance videos of the scene whether the truck had made an improper right-hand turn. Veal did not perform an accident reconstruction or calculate the speed of the motorcycle. He noted in his police report that the "factors contributing to the accident" were that Merrill "failed to pass right safely and struck the curb" and thus Merrill was "responsible for" the accident. According to Veal, Gonzalez did not engage in any conduct that was a contributing factor to the accident. The jury was able to consider this evidence alongside Victory's testimony that she observed both vehicles engage in traffic violations before the accident.

Gonzalez admitted at trial that he had the ability to stay in the right lane to make the turn. He testified that he kept his trailer as close to the right curb as possible in making the turn but "moved [his]

truck a little to the left in order to make a safe turn."

Merrill presented testimony from two expert witnesses who testified as to fault. James Evans, an accident reconstructionist, opined as follows:

- It was impossible to tell from the video surveillance how fast Merrill was traveling before the accident, other than the fact that he was moving faster than the other vehicles that were "slowed down for a turning [truck]."

- His review of the surveillance videos indicated that the truck moved almost completely into the center lane before starting to turn right. If Gonzalez had been completely in the right lane while turning, Merrill would have rear-ended the truck instead of hitting the curb and being thrown off the motorcycle.

- The main cause of the wreck was "the tractor-trailer making the right-hand turn and surprising Mr. Merrill who [was] behind it [and] didn't realize [Gonzalez] was making a right-hand turn until too late."

- Even if Merrill had been traveling the speed limit, the accident still would have occurred.

- Passing the truck on the right under the circumstances was unsafe, but only "[a]s a result of the turn ... Gonzalez did." But Merrill was not passing on the right; instead, he was "driving within his lane of traffic" when the truck made an "incorrect" right turn. Thus, Evans disagreed with Veal's conclusion that Merrill passed unsafely on the right.

- Merrill "may have [had] some small" fault, but Gonzalez was primarily responsible for the collision.

Thomas Truss, who evaluates truck accidents, presented the following testimony:

- The proper way for an eighteen wheeler to make a right turn is to keep its trailer wheels as close to the curb as possible in a maneuver called a buttonhook turn. If not, it is impossible to tell if someone is passing on the right because the mirrors are angled toward the trailer while the cab is turning.
- Gonzalez without "a doubt" could have made the right turn entirely in the right lane.[9]

The defense presented five experts who testified as to fault. James Davis, an expert in motorcycle safety and dynamics, testified as follows:

- He observed Merrill on the video surveillance traveling in the right lane approximately twice as fast as the vehicles in the other lanes, which was "too fast for the conditions."
- Merrill did not aggressively brake to avoid the accident, which would have been the safest course.

Medical doctor Richard Harding opined that a tire did not run over Merrill's head. If it had, Merrill's head would have been crushed by the tire.

Rex Walker, another accident reconstructionist, former highway patrol officer, and Sprint employee, testified:

- Sometimes it is safer to swing wide and make a quicker turn than to risk being rear-ended by making a buttonhook turn that takes longer.
- He prepared an accident investigation report that was admitted at trial. He concluded in the report that

"Gonzalez had properly indicated his intention to turn, the truck and trailer were in the proper lane to make the right turn[,] the motorcycle was traveling at a very high rate of speed and the operator lost control of the motorcycle."

- He subsequently learned that the truck was "mostly within the middle or adjacent lane with the right lane" while executing the turn and the trailer was partially in the middle lane but primarily in the right lane.
- Even under the latter scenario, it would not be "reasonable and prudent" for someone to try to pass the truck on the right while the truck had its right turn signal flashing.
- Sprint characterized the accident as "non-preventable" by Gonzalez.

Accident reconstructionist Robert Swint also testified as to the relative speeds of the drivers, as follows:

- His consultant evaluated the surveillance videos and determined that the motorcycle was traveling on average 65.7 miles per hour, whereas the truck was traveling on average 30.45 miles per hour before it slowed down to turn.
- He opined that Merrill was attempting to get onto the North Loop when his entrance on the left was blocked. He thus went to the right and attempted to pass Gonzalez.
- Merrill's failure to pay attention to his environment and speeding were the "causative factor[s]" in the accident.

---

9. Merrill also presented testimony from an accident reconstructionist and biomedical engineer that Merrill's injuries were caused by the truck's tire running over his head and a helmet would not have protected him. Sprint and Gonzalez argued at trial that Merrill was contributorily negligent in failing to wear a helmet and presented expert testimony that Merrill could have reduced his injuries by wearing a helmet and other safety apparel.

Swint's consultant, Barry Dickey, also testified that the motorcycle was traveling between 59 and 65 miles per hour and the motorcycle was going 2.66 times faster than the truck, which was traveling approximately 30 miles per hour before it began the turn.

The jury was able to take all this evidence into consideration when determining fault. We conclude, in light of the entire record, including Victory's testimony regarding what she saw during the accident, that the exclusion of her testimony regarding fault probably did not cause the rendition of an improper judgment.

We overrule Merrill's second issue.

### Conclusion

We affirm the judgment of the trial court.