

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00409-CV

Samuel **DODSON**,
Appellant

v.

Benito **MUNOZ** d/b/a B M Transport, Erik Munoz, and David Henry Owens,
Appellees

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 16-0367-CV
Honorable William Old, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:        Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice
                Irene Rios, Justice

Delivered and Filed:  August 8, 2018

AFFIRMED

Appellant Samuel Dodson appeals the trial court's take nothing judgment against him in his personal injury suit against David Henry Owens, Benito Munoz d/b/a B M Transport ("BM Transport"), and Erik Munoz. In three issues on appeal, Dodson contends the trial court erred by including a sudden emergency instruction in the jury charge, denying his motion for new trial, and allowing a lay witness to testify as to who was responsible for causing the collision. We affirm.

**BACKGROUND**

On April 30, 2015, Dodson and Owens were both driving tractor trailers southbound on State Highway 46, a four-lane highway with a center turn lane. As Dodson was making a right turn into a private driveway, Owens collided with the back of Dodson's trailer. Thereafter, Dodson sued Owens, BM Transport, and Erik Munoz ("Erik"), asserting claims for negligence, negligence per se, respondeat superior, negligent entrustment, and negligent hiring, training, and retention. The defendants filed a general denial and alleged that Dodson was contributorily negligent and that Owens's conduct was reasonable based on a sudden emergency.

During the five-day trial which began March 20, 2017 and ended March 24, 2017, the jury heard testimony from Department of Public Safety Trooper Samson Krueger, Dodson, Kevin Hubbard, Linda Riley, and Owens, among others.[1] Trooper Krueger responded to the scene and prepared a crash report based on his investigation of the collision. According to the findings of Trooper Krueger's investigation, Dodson had moved into the left lane to make a right turn into a driveway, and Owens, who was traveling behind Dodson and Riley, was unable to stop, drove onto the highway shoulder, and struck the back of Dodson's trailer. Trooper Krueger explained his conclusion that Dodson made the turn from the left lane was based on his assessment that it would have been almost impossible to turn into the driveway from the right lane. Trooper Krueger further explained that because the stretch of highway where the collision occurred is straight, Owens should have had ample time to observe that other vehicles ahead of him had stopped to allow Dodson to turn into the driveway. Trooper Krueger thus concluded the collision was caused by Owens's failure to control his speed. Trooper Krueger also read a witness statement he took at the scene from Kevin Hubbard, who was a passenger in a vehicle driven by his mother, Linda Riley,

---

[1] Trooper Krueger, Kevin Hubbard, and Linda Riley all testified via video depositions.

that had stopped behind Dodson's truck while Dodson was turning into the driveway. The statement read: "[Dodson's] truck was turning right on 46 from the left-hand lane because the turn was too sharp. We were stopped in the right-hand lane. [Owens's] truck was behind us, going the same way, tried to stop, and instead of hitting our car, hit [Dodson's] truck instead. It could not be helped."

Dodson testified that at the time the collision occurred, he was delivering a load of road base material to a job site—his third trip to the site that day. Dodson explained that to turn from the highway into the driveway, he had to slow down, almost to a stop, and veer to the left just prior to turning right. Dodson explained this was because if a tractor trailer turns too narrowly, the trailer tires could leave the roadway and go into the culvert. Dodson testified that about a quarter of a mile away from the driveway, he began tapping his brakes, shifted into a lower gear, and indicated with his turn signal that he was going to turn right. Dodson explained thirty to forty-five seconds passed from when he started slowing down to when he started to turn into the driveway, and another thirty seconds passed from when he started the turn to when the collision occurred. According to Dodson, he was almost all the way into the driveway when he felt the impact of Owens's truck colliding into his trailer. Dodson further testified that immediately after the collision, Owens apologized to Dodson and told him that by the time he looked up and saw Dodson turning, he had no choice—he either had to hit the cars next to Dodson, or hit Dodson's trailer. Dodson also testified he would never make a right-hand turn from the center turn lane because it would be unsafe.

Kevin Hubbard and his mother Linda Riley, who were traveling in the right lane between Dodson and Owens, witnessed the collision and the events leading up to it. Hubbard testified that when Dodson made the turn, Dodson came to a quick stop and very slowly made the turn from the left lane. Hubbard testified that when he first saw Dodson, he and his mother were about 600 yards

behind Dodson's tractor trailer, which had already started crossing the right lane. Hubbard did not recall seeing Dodson use a turn signal. Hubbard explained his car and two cars in the left lane behind Dodson's tractor trailer all came to a complete stop to allow Dodson to make the turn, and that the cars had been stopped for about thirty seconds when the crash occurred. Hubbard testified he suddenly heard the screeching of tires as Owens tried to stop while passing his car to the right. Hubbard testified he heard Owens say he drove onto the highway shoulder to avoid hitting the cars that were stopped on the road. Hubbard explained that when he wrote in his witness statement the crash "couldn't be helped," he meant Owens had to choose between hitting the cars stopped on the highway or going onto the shoulder and hitting Dodson's trailer.

Linda Riley testified she was driving in the right, southbound lane when Dodson's truck, traveling in front of her, activated his left turn signal, went into the left lane, "nearly took out a white SUV" that was traveling in the left lane next to Dodson, entered the center turn lane, and made a wide right-hand turn. Riley related that while Dodson was turning, Dodson came to a complete stop, which caused Riley to slam on her brakes and come to a complete stop. Riley explained that after Dodson came to a stop with his trailer still on the highway, Dodson pulled further into the driveway and was then hit by Owens's truck. Riley testified Dodson never activated his right turn signal, and thus she did not know Dodson was going to turn to the right until he did so. According to Riley, the collision occurred less than a minute after she came to a complete stop on the highway, and a minute to a minute and a half after Dodson began the turn. Riley opined that if Owens had sixty seconds to stop before the impact, Owens would not have been able to stop. Riley further testified that Dodson's testimony that he was in the right lane and veered to the left to turn right was not accurate. Riley opined that Dodson was responsible for the collision because he was in the right lane, signaled left, moved to the left, and then proceeded to make a right turn, pulling out in front of the traffic behind him.

Owens testified he was traveling in the right lane when Dodson's truck, which was also traveling in the right lane, traversed the left lane and entered the center turn lane without using a turn signal. According to Owens, Dodson suddenly turned right from the center turn lane, cutting across both southbound lanes. Owens related the cars between him and Dodson slammed on their brakes and that he slammed on his brakes as well, but was unable to quickly slow down because his trailer was fully loaded. Owens explained he decided that rather than hit the car in front of him, he would drive onto the shoulder and hit Dodson's trailer. Owens related he did not expect Dodson to make a right turn from the center turn lane of the highway. Owens testified he was traveling the speed limit and was keeping a safe and clear distance, about a quarter of a mile, from the vehicles in front of him. Owens further testified about three seconds passed from the time he saw Dodson turning to when he crashed into Dodson's trailer. Owens explained he apologized to Dodson after the collision because he had a choice of whom to hit and he was sorry it was Dodson, whom he had known for over a decade. Owens opined the collision was not his fault because he was simply doing his job—traveling at the speed limit and maintaining his lane—and was not the one who chose to turn out of the center turn lane without warning.

The jury returned a verdict finding Dodson was solely responsible for the collision and awarding Dodson no damages. Dodson filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied the motion and signed a final judgment that Dodson take nothing. This appeal followed.

### ANALYSIS

### Sudden Emergency Instruction

In his first issue, Dodson contends the trial court erred by including a sudden emergency instruction in the jury charge over Dodson's objection.

### 1. *Standard of Review*

We review a trial court's decision to submit or refuse a particular jury instruction for abuse of discretion. *Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 828 (Tex. App.—Houston [1st Dist.] 2015, no pet.). "A trial court has wide discretion in submitting jury instructions and questions . . . subject only to the requirement that the questions submitted must: (1) control the disposition of the case; (2) be raised by the pleadings and the evidence; and (3) properly submit the disputed issues for the jury's determination." *Id.* "If an instruction might aid the jury in answering the issues presented to them, or if there is any support in the evidence for an instruction, the instruction is proper." *Louisiana-Pac. Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex. 1998) (per curiam). An improperly included or excluded jury instruction constitutes reversible error only if it probably caused the rendition of an improper judgment. *Ginn*, 472 S.W.3d at 828; *see also* TEX. R. APP. P. 44.1(a).

### 2. *Applicable Law*

"A sudden emergency instruction advises the jurors that if the evidence shows that conditions beyond the party's control caused the accident in question or that the conduct of some person not a party to the litigation caused it, the jury does not have to place blame on a party." *Jordan v. Sava, Inc.*, 222 S.W.3d 840, 847 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (op. on reh'g). "For an instruction on sudden emergency to be proper, the evidence must support the elements of the sudden emergency defense, *i.e.*, that (1) an emergency situation arose suddenly and unexpectedly; (2) the emergency situation was not proximately caused by the negligent act or omission of the person whose conduct is under inquiry; and (3) after an emergency situation arose that to a reasonable person would have required immediate action without time for deliberation, the person acted as a person of ordinary prudence would have acted under the same or similar circumstances." *Id.*

"An act of nature is not a prerequisite for a sudden emergency . . . [and] [a]ctions by other vehicles can cause a sudden emergency." *Morales v. Dougherty*, No. 12-06-00416-CV, 2008 WL 2930245, at *2 (Tex. App.—Tyler July 31, 2008, no pet.) (mem. op.); *see also Jordan*, 222 S.W.3d at 848 (noting an emergency condition may arise from a stopped car, a car slowing down, or an oncoming car in the same lane of traffic). "If there is conflicting evidence regarding whether there was a sudden emergency, the trial court should submit the requested instruction." *Jordan*, 222 S.W.3d at 847. "In fact, if there is *any support in the evidence for a* sudden emergency instruction, the instruction is properly given." *Benham v. Lynch*, No. 04-09-00606-CV, 2011 WL 381665, at *6 (Tex. App.—San Antonio Feb. 2, 2011, no pet.) (mem. op.) (emphasis in original).

### 3. Discussion

Dodson argues the submission of a sudden emergency instruction was improper in this case because the evidence shows the emergency situation was caused by Owens's negligent conduct. Specifically, Dodson argues Owens cannot benefit from a sudden emergency instruction where the emergency situation was caused by Owens's failure to control his speed.

An emergency situation may arise from a vehicle's sudden and unexpected conduct. *See Knighten*, 976 S.W.2d at 676 (holding trial court did not abuse its discretion by submitting sudden emergency instruction where it was raining and plaintiff abruptly applied her brakes after which defendant's truck ran into her from behind); *DeLeon v. Pickens*, 933 S.W.2d 286, 294 (Tex. App.—Corpus Christi 1996, writ denied) (holding sudden emergency instruction was proper where defendant presented evidence plaintiff and defendant were traveling in different lanes and plaintiff veered into defendant's lane to avoid hitting another car). However, where the evidence unequivocally shows the emergency situation was caused by a defendant's own negligence, a sudden emergency instruction is improper. *See VIA Metro. Transit Auth. v. Barraza*, No. 04-13-00035-CV, 2013 WL 6255761, at *11 (Tex. App.—San Antonio Dec. 4, 2013, pet. denied) (mem.

op.) (holding trial court properly refused a sudden emergency instruction where bus driver unequivocally admitted fault, and thus defendant failed to raise a fact issue as to the second element of the defense).

Dodson's argument that the sudden emergency instruction is unavailable to Owens in this case mirrors the same argument considered and rejected by this court in *Benham v. Lynch*. *See Benham*, 2011 WL 381665, at *7. In *Benham*, the plaintiff sued the defendant after the defendant's vehicle ran into the plaintiff's vehicle from behind. *Id.* at *1. This court stated that "[w]hile the law provides that a motorist driving behind another vehicle 'must drive at a reasonable speed, keep back a reasonable distance, and keep his vehicle under reasonable control to provide for the contingency that a vehicle in front [may suddenly stop],' the mere occurrence of a rear-end collision does not establish negligence as a matter of law." *Id.* at *7. "Rather, whether a rear-end collision raises an issue of negligence or establishes negligence as a matter of law depends on all the facts and circumstances of the case." *Id.* This court concluded that because the defendant raised a fact issue as to whether the collision was caused by the sudden, unexpected failure of the defendant's brakes, the trial court erred by not including a sudden emergency instruction in the jury charge. *Id.*

Likewise, the mere fact that Owens crashed into Dodson's trailer as Dodson was turning into the driveway does not conclusively establish Owens's negligence. Although Trooper Krueger concluded the collision occurred because Owens failed to control his speed, Owens testified he was traveling the speed limit and was keeping a safe and clear distance of about a quarter of a mile from the vehicles in front of him. This conflicting testimony created a fact issue as to whether Owens's negligence created the emergency condition, which the jury reasonably could have resolved in favor of Owens. *See Benham*, 2011 WL 381665, at *7; *Gonzalez v. Cruz*, No. 13-07-351-CV, 2008 WL 2764565, at *5–*6 (Tex. App.—Corpus Christi July 17, 2008, no pet.) (mem.

op.) (holding sudden emergency instruction was proper in a rear-end collision case where fact issue existed as to whether defendant truck driver acted negligently by failing to control his speed, keep a proper lookout, and maintain proper distance).

Moreover, Hubbard, Riley, and Owens testified Dodson made the right-hand turn from either the left lane or the center turn lane without warning, which caused the vehicles behind Dodson to suddenly come to a stop on the highway. Riley and Owens testified Owens, driving a fully-loaded tractor trailer, did not have enough time to come to a complete stop and avoid hitting another vehicle on the roadway. This evidence was sufficient to support the trial court's submission of a sudden emergency instruction to the jury because the jury, viewing this evidence, could reasonably conclude Dodson's unexpected decision to turn right from the center turn lane obstructed traffic on the highway and created an emergency situation for which Owens was not responsible. *See Morales*, 2008 WL 2930245, at \*2–\*3 (holding sudden emergency instruction was proper where witness testified defendant did everything he could to avoid a collision upon seeing vehicles stopped on the road after coming over a hill); *DeLeon*, 933 S.W.2d at 294.

Accordingly, the trial court did not abuse its discretion by including a sudden emergency instruction in the jury charge. We overrule Dodson's first issue.

## Factual Sufficiency

In his second issue, Dodson contends the trial court erred by denying his motion for new trial because the evidence is factually insufficient to support the jury's finding that Dodson was solely responsible for the collision.

### 1. *Standard of Review*

In a factual-sufficiency review, we examine the evidence both supporting and contrary to the judgment. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam); *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). A factual sufficiency attack on an

issue for which the appellant had the burden of proof requires the appellant to demonstrate the adverse finding "is against the great weight and preponderance of the evidence." *Dow Chem. Co.*, 46 S.W.3d at 242. In reviewing a factual-sufficiency challenge, we consider and weigh all the evidence and will not reverse the judgment unless the jury's finding is "so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.*

As an appellate court, we are mindful that we may not "pass on the credibility of witnesses or substitute our judgment for that of the jury." *Rowlett/2000, Ltd. v. City of Rowlett*, 231 S.W.3d 587, 590 (Tex. App.—Dallas 2007, no pet.). "Rather, we will sustain the challenged finding if there is competent evidence of probative force to support it." *St. Germain v. Carter*, 478 S.W.3d 97, 100 (Tex. App.—El Paso 2015, no pet.). "The fact that we may conclude that the evidence preponderates toward an affirmative answer based on our review of the record is not an appropriate ground for reversal." *Id.*

### 2. Discussion

In arguing the evidence was factually insufficient to support the jury's verdict that none of the defendants were responsible for the collision, Dodson points to his own testimony that he was in the right lane and had to slow down significantly to make the turn and Trooper Krueger's testimony that Owens should have had enough time to observe the stalled traffic ahead and come to a complete stop. Dodson also points to evidence that Dodson's truck was almost all the way in the driveway when the impact occurred and that eyewitnesses agreed at least thirty seconds passed from the time Dodson began the turn to the time of impact. This evidence however, conflicted with the testimony of Hubbard, Riley, and Owens that Dodson made the right turn unexpectedly and without warning from either the left lane or the center turn lane, and that Owens did not have time

to come to a complete stop upon realizing Dodson's tractor trailer was unexpectedly blocking traffic on the highway ahead of him.

"A jury is entitled to blend evidence admitted before it and may believe all, some or none of a witness'[s] testimony." *Bufkin v. Bufkin*, 259 S.W.3d 343, 355 (Tex. App.—Dallas 2008, pet. denied). "Appropriate deference must be given to the jury's determination, especially concerning its judgment on the weight and credibility of witness testimony because it is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Hauschildt v. Cent. Freight Lines, Inc.*, No. 10-10-00185-CV, 2011 WL 455264, at *2 (Tex. App.—Waco Feb. 9, 2011, pet. denied) (mem. op.) (holding evidence was factually sufficient to support jury's finding of no-negligence of defendant truck driver where there was conflicting evidence as to whether defendant acted negligently prior to colliding with plaintiffs' vehicle).

The jury, as the judge of the witnesses' credibility, reasonably could have disbelieved Dodson and resolved the conflict in the evidence in favor of Owens. Owens's version of events—that Dodson moved left out of the right lane and without signaling unexpectedly made a right-hand turn—was supported not only by his own testimony, but by two other witnesses who were present at the time of the collision. We therefore conclude the jury's finding was not against the great weight and preponderance of the evidence. Accordingly, the trial court did not err by denying Dodson's motion for new trial. *See St. Germain*, 478 S.W.3d at 103 (concluding evidence was factually sufficient and therefore trial court did not err by denying plaintiff's motion for new trial). We overrule Dodson's second issue.

## Evidentiary Objection

In his third issue, Dodson contends the trial court erred by admitting, over Dodson's objection, Riley's lay opinion testimony regarding which party was responsible for the collision.

- 11 -

Dodson argues Riley's lay opinion testimony was inadmissible because she did not see Owens's tractor trailer before the collision and did not actually see the collision happen.

### 1. *Standard of Review and Applicable Law*

We review a trial court's evidentiary ruling under the abuse of discretion standard. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). "A trial court abuses this discretion when it acts without regard for guiding rules or principles." *Id.* "Even if the trial court abused its discretion in admitting certain evidence, reversal is only appropriate if the error was harmful, *i.e.*, it probably resulted in an improper judgment." *Id.*

A lay witness may testify in the form of an opinion provided it is rationally based on the witness's perception and helpful to clearly understanding the witness's testimony or to determining a fact in issue. TEX. R. EVID. 701. "The requirement that an opinion be rationally based on the perceptions of the witness is composed of two parts: (1) the witness must establish personal knowledge of the events from which his opinion is drawn; and (2) the opinion drawn must be rationally based on that knowledge." *Lopez-Juarez v. Kelly*, 348 S.W.3d 10, 19 (Tex. App.—Texarkana 2011, pet. denied) (internal quotation marks omitted). "An opinion will satisfy the personal knowledge requirement if it is an interpretation of the witness's objective perception of events." *Merrill v. Sprint Waste Servs. LP*, 527 S.W.3d 663, 670 (Tex. App.—Houston [14th Dist.] 2017, no pet.). "An opinion is rationally based on perception if a reasonable person could draw that opinion under the circumstances." *Id.* "An opinion is not objectionable just because it embraces an ultimate issue." TEX. R. EVID. 704.

### 2. *Discussion*

The Fourteenth Court of Appeals recently addressed the issue of lay opinion testimony in a case with similar facts. *See Merrill*, 527 S.W.3d at 666. In *Merrill*, a tractor trailer struck a motorcyclist who attempted to pass the truck on the right when it veered wide into the center lane

to make a right-hand turn. *Id.* at 665–66. The trial court excluded an eyewitness's deposition testimony that the truck driver and motorcyclist were equally at fault for the collision. *Id.* at 668. The court of appeals held that because the witness observed and perceived the incident, she could reasonably opine as to fault; therefore, the trial court abused its discretion by excluding her testimony. *Id.* at 672. As our sister court noted, "it is hard to see how the opinion of [an] eyewitness regarding fault would not be helpful" to the jury. *Id.* at 670.

In this case, Riley, who was driving a vehicle behind Dodson's tractor trailer, witnessed Dodson's maneuverings that immediately preceded the collision. Riley testified Dodson activated his left turn signal, went into the left lane, "nearly took out a white SUV" that was traveling in the left lane next to Dodson, entered the center turn lane, and made a wide right-hand turn into the driveway. Riley further testified that Dodson's wide turn across the highway caused Riley to slam on her brakes and come to a complete stop. Although Riley did not see the impact occur, she heard it as it happened next to her.

A reasonable person in Riley's position could have concluded that the collision would not have occurred but for Dodson's decision to unexpectedly make a right-hand turn from the center turn lane, thereby blocking the highway. Thus, the trial court reasonably could have concluded that Riley's opinion as to who was responsible for causing the collision was rationally based on her personal and objective perception of the events leading up to the collision and helpful to the jury in determining who was responsible for the collision. Accordingly, we conclude the trial court did not abuse its discretion by admitting Riley's opinion testimony. We overrule Dodson's third issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

Irene Rios, Justice

- 13 -