**Opinion filed June 28, 2019**



### In The

# Eleventh Court of Appeals

_____

## No. 11-17-00121-CV

_____

## FARMERS & MERCHANTS BANK, Appellant

## V.

## ROBERTA HODGES, Appellee

**On Appeal from the 220th District Court**

**Comanche County, Texas**

**Trial Court Cause No. CV16015**

### M E M O R A N D U M   O P I N I O N

This is an appeal from a jury trial wherein the jury awarded the plaintiff, Roberta Hodges, a judgment in excess of $300,000. Hodges applied for a loan from Farmers & Merchants Bank (FMB) in order to purchase a feed store. After the loan transaction failed to close, Hodges sued FMB, asserting claims for fraud, negligent misrepresentation, breach of fiduciary duty, and promissory estoppel. The jury found in favor of Hodges on all her causes of action, and the trial court rendered judgment in favor of Hodges on her fraud claim.

In its first issue on appeal, FMB contends that the jury's finding that Hodges attempted to obtain the loan under false pretenses bars her recovery on all causes of action.[1]  In four additional issues, FMB challenges the legal and factual sufficiency of the evidence to support the jury's award of damages and the jury's findings that FMB's conduct caused any of Hodges's damages, that FMB acted with fraudulent intent, and that FMB owed Hodges a fiduciary duty.  We sustain FMB's third issue to the extent that it challenges the legal sufficiency of the evidence to establish that FMB's conduct caused any of Hodges's damages.  Because this determination is dispositive of the case, we reverse the judgment of the trial court and render judgment that Hodges take nothing against FMB.

*Background Facts*

Hodges sought to obtain a commercial loan from FMB in order to purchase Stephens Feed & Fertilizer (Stephens Feed) in De Leon from Terry and Marsha Stephens (collectively, the Stephenses).  Hodges originally applied for the loan in 2012, but FMB denied the application.  After learning about the option of purchasing a loan guarantee from the United States Department of Agriculture (USDA), Hodges applied for a loan from FMB a second time.

Hodges dealt primarily with loan officer Tim Beaty, a vice president of FMB.  Hodges worked with Beaty for over a year.  Hodges initially represented to FMB that she had agreed to pay $335,000 for Stephens Feed, but later told Beaty that she had agreed to a new purchase price of $297,000.  The Stephenses, however, never agreed to lower the purchase price.  Rather, Hodges had a separate agreement with Terry Stephens to pay the remaining $38,000.  Hodges admitted that she told FMB

---

[1]The jury answered the following question in the affirmative: "Did Hodges knowingly provide false, incorrect, or misleading information to Farmers & Merchants Bank with the intention to secure a loan through false pretenses?"

2

that the price had been reduced in order to increase the probability that the USDA would approve the loan guarantee application.

In August 2013, Hodges signed a written contract to purchase Stephens Feed from the Stephenses for $296,000[2] and provided FMB with a copy of the contract. Although Hodges's $38,000 "side deal" had been reduced to writing, she did not provide FMB with a copy of that contract. When Hodges was asked why she did not tell Beaty about the side deal, Hodges testified that she did not tell him because "[t]hat was between me and Terry [Stephens]." Hodges testified that the purpose of the side deal was that she and Terry Stephens thought it would be "simpler" and "quicker" if they "went under [$]300,000 for the loan with the USDA." Hodges testified that the purchase price "with Mr. Stephens" was always $335,000. Beaty testified that the bank did not become aware of the side deal until after the underlying lawsuit was filed.

Beaty repeatedly told Hodges that he was working on her loan guarantee application and would submit it to the USDA for approval. Hodges testified that, Beaty told her during a phone call in January 2014 that "he was going to do the loan" with an interest rate of about five percent. Before FMB approved the loan or submitted the USDA loan guarantee application, Hodges, through her company Hodges Ag Center, Inc., entered into a contract with Stephens Feed to lease its property, equipment, and vehicles on a month-to-month basis. FMB officially approved Hodges's loan application, pending the USDA guarantee, through a written memorandum on November 5, 2014.

The feed store was encumbered by a lien held by First National Bank (First National), and in October 2014, First National sought to foreclose on its lien. First

---

[2]The record does not explain why the contract amount was for $296,000 rather than $297,000—the amount Hodges originally reported to the bank.

National agreed to delay foreclosure if Hodges or Terry Stephens paid $20,000 toward the equipment loan and if Hodges made all future lease payments payable to both Terry Stephens and First National. Hodges did not pay First National the initial $20,000 and failed to make any lease payments for the feed store for January through April of 2015. Subsequently, First National foreclosed on Stephens Feed's equipment and sold the equipment to a third party. Upon learning that the feed store's equipment had been sold, FMB advised Hodges that it would not provide her with a loan.

Hodges sued FMB, asserting multiple causes of action. In essence, Hodges argued that FMB's failure to timely submit her loan guarantee application to the USDA prevented her from purchasing Stephens Feed and caused her significant financial harm. The jury found in favor of Hodges on her claims of fraud, breach of fiduciary duty, negligent misrepresentation, and promissory estoppel. However, the jury also found that Hodges had knowingly provided false, incorrect, or misleading information to FMB with the intention to secure a loan through false pretenses.

FMB filed a motion for entry of judgment, arguing that the jury's false pretenses determination barred Hodges's recovery because she had unclean hands. FMB also challenged the legal and factual sufficiency of the evidence to support the jury's verdict and requested a take-nothing judgment. The trial court entered judgment in favor of Hodges on the fraud claim and awarded her $310,000 in damages. The trial court denied FMB's motion for judgment *non obstante verdicto* and motion for new trial. This appeal followed.

*Analysis*

In its third issue, FMB asserts that the evidence is legally and factually insufficient to support a finding that its conduct caused Hodges's injury—an element of all of Hodges's claims. Specifically, FMB argues that there is no, or insufficient, evidence that the injuries complained of and damages sought by Hodges were

4

proximately caused by FMB's actions, and as such, Hodges can recover on none of her claims.

Hodges asserted claims against FMB for fraud, breach of fiduciary duty, negligent misrepresentation, and promissory estoppel. Causation, or some connection between the defendant's actions and the plaintiff's harm, is an element of each of these causes of action. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (noting that one of the elements of a common law fraud claim is that the plaintiff suffered injury as a result of the defendant's conduct); *id.* at 653–54 (noting that elements of a negligent misrepresentation claim include that the plaintiff "suffer[ed] pecuniary loss by justifiably relying on the representation"); *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220–21 (Tex. 2017) (noting that to recover on a breach-of-fiduciary-duty claim for actual damages, the plaintiff must show its damages are causally related to the fiduciary's conduct); *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983) (noting that elements of a promissory estoppel claim include detrimental reliance by the promisee on a promise by the promisor).

In evaluating the legal sufficiency of the evidence to support a finding, we determine whether the evidence at trial could enable reasonable and fair-minded people to reach the verdict under review. *McAllen Hosps., L.P. v. Lopez*, No. 17-0733, 2019 WL 2147252, at *2 (Tex. May 17, 2019) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We must consider the evidence "in the light most favorable to the verdict, and indulge every reasonable inference that would support it." *City of Keller*, 168 S.W.3d at 822. "A challenge to the legal sufficiency of evidence will be sustained when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006); *see also Lopez*, 2019 WL 2147252, at *2. Evidence that is so weak that it creates only a mere surmise or

suspicion that a fact exists is regarded as no evidence. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014); *Suberu*, 216 S.W.3d at 793.

The jury found that FMB promised to submit the USDA loan guarantee application for Hodges but that FMB did not promise to provide a USDA guaranteed loan to Hodges. Accordingly, Hodges had the burden of establishing that FMB's failure to submit the application for Hodges harmed her. All of Hodges's claims were based on a common assertion—that the USDA would have approved the loan had FMB timely submitted the loan application. FMB argues that there is no evidence of the following matters: (1) that the USDA would have approved the loan guarantee application if FMB had timely submitted it, (2) that FMB told Hodges that the USDA would approve her loan guarantee application if it was submitted in compliance with the government's requirements, and (3) that failing to submit a fraudulent loan package on behalf of a borrower can cause any compensable harm to the borrower.

Hodges responds that FMB's failure to complete and submit her loan application for over two years "was the substantial and most significant cause of the damages" she suffered. Hodges asserts that she presented sufficient evidence that FMB's failure caused her harm through (1) her testimony that FMB failed to complete her loan application for over two years and that John Powell, a USDA official, inspected Stephens Feed in August 2014 and told her that the store was going to be the recipient of a loan by the USDA and (2) Beaty's testimony that FMB believed that the loan would have been funded by the USDA after the complete loan package was submitted. Hodges also points out that the e-mails between Hodges and Beaty "do not contain any significant discussion by Beaty that the loan might not be approved by the USDA" and that Beaty admitted that the USDA would not have done its own credit assessment of the loan.

6

Beaty testified that FMB would not have tried to submit a loan guarantee application to the USDA if he and other FMB employees did not think that the application would be approved. Essentially, Beaty offered his opinion of what the USDA, a federal agency, would do with respect to Hodges's loan application.

Rule of Evidence 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception; and
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue.

TEX. R. EVID. 701; *see also Merrill v. Sprint Waste Servs. LP*, 527 S.W.3d 663, 670 (Tex. App.—Houston [14th Dist.] 2017, no pet.). "The perception underlying the lay witness's testimony may be what was seen, heard, smelled, tasted, touched or felt." *Bd. of Trs. of Fire & Police Retiree Health Fund v. Towers, Perrin, Forster & Crosby, Inc.*, 191 S.W.3d 185, 193 (Tex. App.—San Antonio 2005, pet. denied) (quoting *State v. Brainard*, 968 S.W.2d 403, 412 (Tex. App.—Amarillo 1998), *aff'd in part & rev'd in part on other grounds*, 12 S.W.3d 6 (Tex. 1999)). Rule 701, therefore, "presumes the witness observed or experienced the underlying facts, thus meeting the personal-knowledge requirement of [Rule of Evidence] 602." *Id.* (quoting *Turro v. State*, 950 S.W.2d 390, 403 (Tex. App.—Fort Worth 1997, pet. ref'd)); *see also Merrill*, 527 S.W.3d at 670 (noting that Rule 701 requires that lay witness "establish personal knowledge of the events from which her opinion is drawn" and that opinion "be rationally based on that knowledge").

To the extent that Hodges relies on Beaty's opinion as evidence that the USDA would have approved the application, there is no factual basis to support the opinion. There is no evidence that Beaty had any knowledge of the criteria that the USDA used to process or approve applications on loan guarantees or of

7

Beaty's experience, if any, with having such guarantees approved by the USDA. Further, nothing in the record establishes that Beaty had any personal knowledge about the likelihood that the USDA would approve the loan guarantee application, why he thought the application would be approved, or the specific time frame in which the USDA would approve the application.

Without factual support, Beaty's personal opinion that the USDA would approve the loan guarantee application is merely conclusory and amounts to no evidence that the USDA would have promptly reviewed the application, approved it, and provided Hodges with a loan guarantee. *See Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156–57 (Tex. 2012) (citing *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004) (concluding that "bare conclusions—even if unobjected to—cannot constitute probative evidence")); *Bd. of Trs. of Fire & Police Retiree Health Fund*, 191 S.W.3d at 193–94 (concluding that speculative opinion, "such as an opinion on what someone else was thinking at a specific time" is mere conjecture that will not assist jury). Similarly, the fact that Beaty's e-mails with Hodges did not provide "significant discussions" that the USDA might not approve the loan guarantee application is no evidence that the application would have actually been approved. Furthermore, Beaty's comments were made without knowledge of Hodges's side deal with the Stephenses.

Although no one from the USDA, including Powell, testified at trial, Hodges also relies on her testimony that Powell told her in August 2014 that Stephens Feed would be the recipient of a loan by the USDA as evidence that FMB's failure to timely submit the loan guarantee application caused her damages. In August 2014, however, FMB had not approved Hodges's loan application and had not submitted Hodges's loan guarantee application to the USDA. Therefore, at the time the statement was made, Powell had not reviewed Hodges's loan guarantee application and had no personal knowledge of the merits of the application. There is no evidence

8

of the average amount of time that the USDA took to consider loan guarantee applications similar to Hodges's, nor is there any evidence that Powell indicated when any approval would occur. Additionally, there is no evidence that Powell was aware of Hodges's side deal with the Stephenses when he made the alleged statement indicating that the USDA would approve the loan. We note in this regard that the USDA loan guarantee application begins with a criminal warning about making false statements, followed by this warning: "CERTIFICATION: Information contained below and in attached exhibits is true and complete to the best knowledge. Misrepresentations of material facts may be the basis for denial of credit by the United States Department of Agriculture (USDA)."

Further, other than Beaty's statement that the USDA would rely on FMB's credit assessment, there is no evidence of the criteria that the USDA used to approve an application or that Hodges's loan guarantee application met that criteria. Finally, there is no evidence establishing that Powell had the authority to approve Hodges's loan guarantee application. In fact, the evidence reflects that, after Powell received a loan guarantee application, he had to "work it up for loan committee review" and "they" would decide if the project could be funded.

Because there is no evidence in the record to supply a factual basis for Powell's opinion that the USDA would approve the application, Hodges's testimony about Powell's statement is conclusory and will not support a finding that the USDA would have approved Hodges's application during any specific time frame if it had been submitted by FMB. *See Justiss*, 397 S.W.3d at 156–57; *Bd. of Trs. of Fire & Police Retiree Health Fund*, 191 S.W.3d at 193–94.

To recover on any of her causes of action, Hodges was required to prove that FMB's failure to timely submit the loan guarantee application caused her harm. However, based on our review of the record, the evidence that FMB's failure to submit the loan guarantee application caused any of Hodges's claimed damages is

9

no more than a mere scintilla. *See City of Keller*, 168 S.W.3d at 827. Accordingly, there is legally insufficient evidence to support recovery on any asserted ground for relief. We sustain FMB's third issue to the extent that it challenges the legal sufficiency of the evidence to support the jury's finding that FMB's conduct caused any harm to Hodges.

Because we have determined that there is legally insufficient evidence to establish that FMB's failure to submit the loan guarantee application to the USDA caused any injury to Hodges, we need not address FMB's complaint that the evidence is factually insufficient to support causation. *See* Tex. R. App. P. 47.1. Further, based on our disposition of FMB's third issue, we need not address its remaining four issues. *Id.*

*This Court's Ruling*

We reverse the judgment of the trial court and render judgment that Hodges take nothing against FMB.


JOHN M. BAILEY
CHIEF JUSTICE


June 28, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.